UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------ X

STANLEY A. KIM, On Behalf of Himself and
Others Similarly Situated,

Plaintiff,

vs.

EPIX PHARMACEUTICALS, INC., MICHAEL D.
WEBB, PEYTON J. MARSHALL and ANDREW
UPRICHARD.

Defendants.

------------------------------------------------------ X

**05 10315 PBS**

**FEDERAL SECURITIES LAWS**

**DEMAND FOR JURY TRIAL**

RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE_____

## SUMMARY AND OVERVIEW

1.     This is a securities class action on behalf of all purchasers of the publicly traded

securities of EPIX Pharmaceuticals, Inc. (EPIX or the ,Company) between July 10, 2003 and January

14, 2005 (the Class Period), against EPIX and certain of its officers and directors for violations of

the Securities Exchange Act of 1934 (the "Exchange Act").

2. EPIX (formerly known as EPIX Medical Inc.) is a developer of targeted contrast agents

that are designed to improve the diagnostic quality of images produced by magnetic resonance

imaging (MRI).   MRI is an imaging technology for a range of applications, including the

identification and diagnosis of a variety of medical disorders.

3. Defendants progressed MS-325, the Company's principal product in development,

through early stage clinical trials. Following completion of those trials, in December 2003, EPIX

submitted a New Drug Application (NDA) for MS-325 to the United States Food and Drug

Administration (FDA).   MS-325 is designed to provide visual imaging of the vascular system

through a type of MRI known as magnetic resonance angiography (MRA).

00004209.WPD ; 1

4.  On or before July 10, 2003, defendants became aware of clinical quality issues with the underlying data for their MS-325 Phase III program.  These issues, including the generation of unintelligible imaging scans, made difficult, if not impossible, the proper control of their clinical test results and statistical analysis of the data and results.  Defendants knew that, if they were to meet the timelines and expectations of the market, these serious issues would need to be mitigated or overlooked. Stating in their press release of July 10, 2003 that ,[t]he consistency of the results shown in all four Phase III studies has demonstrated that MS-325 should enable physicians to make important decisions about the care of their patients with greater confidence and accuracy, defendants reiterated their plan to submit their NDA for MS-325 by the end of 2003.

5.  On December 16, 2003, defendants announced the submission of their NDA for MS-325. Defendants continued to conceal the serious problems with their clinical program, specifically the poor quality of the underlying clinical data and problems with the statistical analysis.  Defendants instead made positive and encouraging remarks about their extensive scientific and clinical development activities and prospects for product approval.

6.  Then, on January 14, 2005, the Company reported shocking news about the MS-325 submission. Although defendants sought to place a positive spin on their receipt of an FDA, approvable action letter for MS-325, the news was far from positive. The FDA had determined that problems with the Phase III clinical trials were so serious that it was impossible for them to come to a conclusion about the efficacy of MS-325.  Worse, the FDA noted problems with the underlying data itself, problems that could not be resolved simply on the basis of re-analysis of the data. Thus, defendants delivered a serious setback to investors and, based on their news, the price of EPIX stock plunged 27%, to $10.67, for a loss of $3.98 per share, on volume of 11 million shares.

7. The true facts, which were known by each of the defendants but concealed from the investing public during the Class Period, were as follows:

(a) The EPIX Phase III protocol for MS-325 allowed clinical investigators to substitute their own institutional standard for MRI imaging and the result of the use of different imaging methods to acquire non-contrast MRA comparator, control scans demonstrated great variability from study site to site, seriously impacting the Company's ability make a case for the efficacy of MS-325 and diminishing prospects for product approval;

(b) Clinical investigators generated a large number of uninterpretable images during the Phase III trials, a result rooted in the absence of clear instruction and defective clinical quality standards as to the requirements for performance of test and non-contrast MRA comparator scan controls;

(c) the absence of clear-cut clinical quality management practices to deal with test and control scan problems was responsible for difficulties in the statistical analysis and determination of efficacy of MS-325;

(d) problems with uninterpretable images, multiple standards for acquisition of control scans, deficient clinical quality practices, and difficulties in the statistical analysis and determination of efficacy of MS-325 were known to defendants prior to the submission of the clinical data and results to the FDA; and

(e) problems with the quality of the underlying clinical data and results for the MS-325 NDA were so serious that the product was unlikely to be approved for use by the FDA at the end of the regulatory review cycle.

8. As a result of the defendants' false statements, EPIX shares traded at inflated prices during the Class Period, causing millions of dollars of damage to the Class. On June 3, 2004, as EPIX stock traded as high as $24.20 a share, the Company announced the sale of $100 million (including the over-allotment) in 3.00% convertible senior notes (the Notes), resulting in proceeds of approximately $96 million to the Company. In connection with that offering, the Company announced on November 3, 2004 that the Securities and Exchange Commission (SEC) had declared effective its Registration Statement on Form S-3 relating to the resale of its Notes and the shares of its common stock issuable upon conversion of the Notes.

## JURISDICTION AND VENUE

9. Jurisdiction is conferred by Section 27 of the Exchange Act. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5.

(a) Venue is proper in this District pursuant to Section 27 of the Exchange Act. Many of the false and misleading statements were made in or issued from this District.

(b) The Company's principal executive offices are in Cambridge, Massachusetts, where the day-to-day operations of the Company are directed and managed.

## THE PARTIES

10. Plaintiff Stanley A. Kim purchased EPIX securities as described in the attached certification and was damaged thereby.

11. Defendant EPIX is a developer of targeted contrast agents that are designed to improve the diagnostic quality of images produced by MRI. MRI is an imaging technology for a range of applications, including the identification and diagnosis of a variety of medical disorders.

12. Defendant Michael D. Webb was Chief Executive Officer, a director and Secretary of

00004209.WPD ; 1                                4

EPIX. During the Class Period, defendant Webb sold 66,254 shares of EPIX stock, for net proceeds of $1.2 million.

13. Defendant Peyton J. Marshall was Senior Vice President, Finance and Administration and Chief Financial Officer of EPIX. During the Class Period, defendant Marshall sold 21,500 shares of EPIX stock, for net proceeds of $372,071.

14. Defendant Andrew Uprichard was President and Chief Operating Officer of EPIX.

15. The individuals named as defendants in ¶¶ 12-14 are referred to herein as the Individual Defendants.

## SCIENTER

16. In addition to the above-described involvement, each Individual Defendant had knowledge of EPIX's problems and was motivated to conceal such problems. Defendant Webb, having served as CEO, and defendants Marshall and Uprichard, having served as Chief Financial Officer and Chief Operating Officer, respectively, were responsible for press releases and communications issued by the Company. Each Individual Defendant sought to demonstrate that he could lead the Company successfully and generate the growth expected by the market.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

17. Each defendant is liable for: (a) making false statements; or (b) failing to disclose adverse facts known to him about EPIX. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of EPIX publicly traded securities was a success, as it: (i) deceived the investing public regarding EPIX's prospects and business; (ii) artificially inflated the price of EPIX publicly traded securities; (iii) allowed the Company to issue Notes at inflated prices;(iv) allowed defendants to sell $1.5 million worth of their own shares at inflated prices; and

(v) caused plaintiff and other members of the Class to purchase EPIX publicly traded securities at inflated prices.

## DEFENDANTS' FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

18. On July 10, 2003, defendants issued a press release entitled, EPIX Announces Results of Final Phase III Trials of MS-325 for MR Angiography; Renal and Pedal MRA Studies Meet Primary Endpoints Supporting Broad Vascular Imaging Indication. The press release stated in part:

Results from EPIX Medical Inc.'s final two Phase III MS-325 clinical trials in patients with suspected vascular disease in the renal and pedal arteries (kidneys and feet) were announced today concurrent with the Eleventh Annual Scientific Meetingof the International Society of Magnetic Resonance in Medicine (ISMRM) in Toronto. *Each trial met its primary clinical endpoint, demonstrating statistically significant improvement in accuracy for detecting renal and pedal vascular disease with MS-325-enhanced magnetic resonance angiography (MRA) compared to non-contrast MRA. These final two Phase IIIstudies further support results from previous Phase IIIstudies and will form the basis for the NDA submission planned for later in the year, requesting a broad MRA indication.* The company expects MS-325 to be the first contrast agent submitted to the FDA for an MRA indication.

We believe that these latest study results, as part of the complete MS-325 Phase III database, will provide a very strong package to support the broad use of MS-325 in MRA, which we see as the next generation of MR contrast, said EPIX CEO Michael D. Webb. Our NDA submission will include the results from all four Phase III MS-325 clinical trials in patients with suspected vascular disease in the aortoiliac, pedal and renal arteries. After recent consultation with the FDA, we continue to believe that our MRA studies in these widely varying vascular areas will support a broad indication for MRA using MS-325.

Previous studies with MS-325 support the safety and efficacy of this novel imaging agent in the aortoiliac region, where blood flow can be turbulent. The results of these final two studies confirm the wide range of vascular beds that can be examined using MS-325 MRA, said Gregory Sorensen, M.D., Associate Professor of Radiology at Harvard Medical School and Medical Director for EPIX. Dr. Sorensen further commented. These Phase III studies show that MS-325 aids the imaging of blood flow to organs such as the kidneys, and areas of slow blood flow such as the feet. The consistency of the results shown in all four Phase III studies has demonstrated that MS-325 should enable physicians to make important decisions about the care of

their patients with greater confidence and accuracy.

19. On December 16, 2003, defendants issued a press release entitled, EPIX Submits MS-325 New Drug Application to FDA; Seeks First U.S. Approval for Magnetic Resonance Angiography Indication. The press release stated in part:

> EPIX Medical, Inc., a developer of specialty pharmaceuticals for magnetic resonance imaging (MRI), today announced that it has submitted a New Drug Application (NDA) to the Food and Drug Administration (FDA) for MS-325, a contrast agent designed specifically for vascular imaging with magnetic resonance angiography (MRA). MS-325 is being co-developed by EPIX and Schering AG, Germany.

> EPIX is the first company to seek marketing approval in any country for an MR blood pool agent, a new class of imaging agents expected to expand the clinical use of MRI by providing patients and physicians an innovative means for diagnosing vascular abnormalities. *The MS-325 NDA is the culmination of an eight-year MRA development program that was discussed with the FDA as the trials progressed. It includes the results of 18 clinical trials, involving 1,438 subjects who received MS-325.* The MS-325 NDA is the first application for marketing approval for an MR contrast agent to be submitted to the FDA for the primary indication of MRA.

> *After extensive scientific and clinical development, we are extremely pleased to announce the submission of the MS-325 NDA to the FDA for a broad vascular imaging indication outside the heart,* commented Michael D. Webb, President and CEO of EPIX. Currently, the standard diagnostic exam for vascular disease is invasive, catheter-based X-ray angiography. We believe MS-325-enhanced-MRA will provide a valuable alternative to X-ray angiography. In addition, there are a significant number of people with vascular disease who, for medical or other reasons, are unlikely to undergo an X-ray angiogram, and who might benefit from a minimally-invasive MRA exam using MS-325.

> An estimated 62 million people in the United States have some form of cardiovascular disease, which can result in atherosclerotic plaque build-up that causes stroke, heart attack, or limb loss, continued Webb. In 2002, there were 4.8 million diagnostic angiograms performed in arterial beds outside the heart, and an additional 2.7 million diagnostic angiograms of the coronary arteries. As our population ages, cardiovascular disease is putting an increasing burden on our healthcare system. We believe that MS-325 will address a large and growing medical need, and that both patients and physicians will rapidly adopt this new, less costly procedure.

> About MS-325

MS-325 binds reversibly to human serum albumin, brightening the blood for a prolonged period. This feature may allow physicians to collect more meaningful clinical data using widely available MRI equipment to diagnose and characterize vascular disease. MS-325-enhanced MRA is less invasive than current catheter based X-ray angiography, and has the potential to provide health care professionals with an alternative to diagnose and manage patients with vascular disease.

20. On February 17, 2004, defendants issued a press release entitled ,EPIX Announces FDA Acceptance of Filing of MS-325 NDA; Review of First Drug Developed for MR Vascular Imaging on Track. The press release stated in part:

> EPIX Medical, Inc., a developer of pharmaceuticals for magnetic resonance imaging(MRI), today announced that the U.S. Food and Drug Administration (FDA) has determined that the New Drug Application (NDA) submitted for MS-325 (gadofosveset) has been accepted for filing by the Agency and has been designated for a standard review cycle. *Acceptance for filing indicates that the FDA considers the NDA to be complete and ready for review.* The target date for first FDA action in the standard review cycle is ten months from the December, 2003 date of submission. MS-325, a contrast agent designed specifically for vascular imaging with magnetic resonance angiography (MRA), is being co-developed by EPIX Medical, Inc. and Schering AG, Germany.

> The NDA submission for MS-325 was based on the results of a large Phase III clinical trial program that included four separate studies. We have been working actively with the FDA, and are pleased to move to the next stage of the review process, said Michael D. Webb, President and CEO of EPIX. We believe that, if approved, MS-325-enhanced MRA will provide a safer way to perform diagnostic angiography. Given the risks that are associated with catheter X-ray angiography, many patients are contraindicated for either the X-ray contrast agent, or the procedure itself. MS-325 has the potential to help address this important medical need.

21. On June 3, 2004, the Company announced the sale of $100 million (including the over-allotment) in 3.00% convertible senior notes (the "Notes"), resulting in proceeds of approximately $96 million to the Company.

22. On November 3, 2004, defendants issued a press release entitled, EPIX Announces Effectiveness of Registration Statement for Resale of 3.00% Convertible Senior Notes Due 2024.

The press release stated in part:

> EPIX Pharmaceuticals, Inc., a developer of innovative pharmaceuticals for magnetic resonance imaging (MRI), today announced that the Securities and Exchange Commission has declared effective its Registration Statement on Form S-3 relating to the resale of $100 million aggregate principal amount of its 3.00% convertible senior notes due 2024 (the Notes) and the shares of its common stock issuable uponconversion of the Notes.  The Notes were originally issued in a private placement in June 2004.

> EPIX will not receive any proceeds from the sale by any selling holder of the Notes or the shares of EPIX common stock issuable upon conversion of the Notes.

### THE TRUTH IS REVEALED

23.  On January 14, 2005, defendants issued a press release entitled, EPIX Pharmaceuticals

Announces Receipt of Approvable Letter from FDA for MS-325; Agency Requests Additional

Clinical Studies.  The press release stated in part:

> EPIX Pharmaceuticals, Inc., announced today that the U.S. Food and Drug Administration (FDA) has completed its review of the new drug application for MS-325 (gadofosveset trisodium), and found it to be approvable.  In the approvable letter, the FDA *requested additional clinical studies to demonstrate efficacy prior to approval.*  MS-325 is the first in a new class of MRI blood pool contrast agents, and is specifically designed for magnetic resonance angiography (MRA).

> *The FDA indicated that its principal questions continue to relate to the non-contrast MRA comparator scans used in the Phase IIItrials and to the statistical treatment of uninterpretable images.  The letter identified no safety or manufacturing deficiencies.*

> EPIX is continuing its active dialogue with the FDA in order to determine the next steps the Company will need to take to secure the approval of this first-of-its kind contrast imaging agent.  EPIX remains committed to developing MRI cardiovascular imaging pharmaceuticals that enable clinicians to obtain and view clearer scans.

24.  During defendants' conference call of January 14, 2005, defendants were pressed to

discuss, the timeline of their requirements going forward.  Responding to this and similar questions,

defendant Webb noted:

I think our history in the four Phase III trials is probably what I'd want to comment on which is that we did conduct the four Phase III trials. They were relatively large. We do have a highly experienced machine here in terms of generating the patient enrollment. *It takes several months to get a protocol written and submitted and approved through IRBs at various sites.*

The Phase III trials we conducted over the last few years, actual patient enrollment time was 9 to 12 months per trial from first injection to final injection. And then of course the blinded read (ph) and the sufficient and rollup of all the data takes many months on the back of that.

25. The shocking news of January 14, 2005, revealed problems with the MS-325 Phase III clinical program so serious that the FDA required entirely new efficacy studies. These problems highlight the aggressive promotion during the Class Period of an otherwise highly deficient and defective clinical program for MS-325 by defendants. Based on this news, the price of EPIX's stock plunged 27%, to $10.67, for a loss of $3.98 per share, on volume of 11 million shares.

26. The true facts, which were known by each of the defendants but concealed from the investing public during the Class Period, were as follows:

(a)    The EPIX Phase III protocol for MS-325 allowed clinical investigators to substitute their own institutional standard for MRI imaging and the result of the use of different imaging methods to acquire non-contrast MRA comparator, control scans demonstrated great variability from study site to site, seriously impacting the Company's ability make a case for the efficacy of MS-325 and diminishing prospects for product approval;

(b) Clinical investigators generated a large number of uninterpretable images during the Phase III trials, a result rooted in the absence of clear instruction and defective clinical quality standards as to the requirements for performance of test and non-contrast MRA comparator scan controls;

(c) the absence of clear-cut clinical quality management practices to deal with test and control scan problems was responsible for difficulties in the statistical analysis and determination of efficacy of MS-325;

(d) problems with uninterpretable images, multiple standards for acquisition of control scans, deficient clinical quality practices, and difficulties in the statistical analysis and determination of efficacy of MS-325 were known to defendants prior to the submission of the clinical data and results to the FDA; and

(e) problems with the quality of the underlying clinical data and results for the MS-325 NDA were so serious that the product was unlikely to be approved for use by the FDA at the end of the regulatory review cycle.

## INSIDER SELLING

27. During the Class Period, defendant Webb sold a total of 66,254 shares of EPIX stock, in accordance with the following schedule, for net proceeds of $1.2 million:

| Date | Sold | Price | Proceeds |
|------|------|-------|----------|
| 09/16/2004 | 1,900 | $21.30 | $40,470 |
| 09/16/2004 | 1,245 | $21.20 | $26,394 |
| 09/16/2004 | 1,032 | $21.35 | $22,033 |
| 09/16/2004 | 400 | $21.31 | $8,524 |
| 09/16/2004 | 223 | $21.40 | $4,772 |
| 09/16/2004 | 100 | $21.32 | $2,132 |
| 09/16/2004 | 100 | $21.33 | $2,133 |
| 09/17/2004 | 2,500 | $20.83 | $52,075 |
| 09/17/2004 | 2,500 | $20.80 | $52,000 |
| 09/21/2004 | 564 | $20.65 | $11,647 |
| 09/23/2004 | 2,500 | $20.20 | $50,500 |
| 09/24/2004 | 1,526 | $20.35 | $31,054 |
| 09/24/2004 | 1,500 | $20.12 | $30,180 |
| 09/24/2004 | 1,450 | $20.36 | $29,522 |
| 09/24/2004 | 1,000 | $20.12 | $20,120 |
| 09/24/2004 | 978 | $20.25 | $19,805 |

| 09/24/2004 | 338 | $20.16 | $6,814 |
| 09/24/2004 | 72 | $20.37 | $1,467 |
| 09/24/2004 | 72 | $20.53 | $1,478 |
| 09/29/2004 | 1,000 | $19.61 | $19,610 |
| 09/30/2004 | 1,006 | $19.25 | $19,366 |
| 09/30/2004 | 1,000 | $19.35 | $19,350 |
| 09/30/2004 | 462 | $19.30 | $8,917 |
| 09/30/2004 | 462 | $19.20 | $8,870 |
| 10/01/2004 | 1,070 | $19.27 | $20,619 |
| 10/01/2004 | 1,001 | $19.30 | $19,319 |
| 10/01/2004 | 1,000 | $19.16 | $19,160 |
| 10/01/2004 | 269 | $19.45 | $5,232 |
| 10/01/2004 | 230 | $19.32 | $4,444 |
| 10/04/2004 | 2,500 | $19.85 | $49,625 |
| 10/07/2004 | 2,500 | $17.60 | $44,000 |
| 10/08/2004 | 2,500 | $17.90 | $44,750 |
| 10/14/2004 | 1,254 | $16.85 | $21,130 |
| 10/15/2004 | 2,000 | $16.65 | $33,300 |
| 10/21/2004 | 2,160 | $16.25 | $35,100 |
| 10/21/2004 | 340 | $16.25 | $5,525 |
| 10/22/2004 | 2,500 | $16.50 | $41,250 |
| 10/22/2004 | 1,700 | $16.65 | $28,305 |
| 10/22/2004 | 700 | $16.70 | $11,690 |
| 10/22/2004 | 100 | $16.75 | $1,675 |
| 10/28/2004 | 2,500 | $16.10 | $40,250 |
| 10/29/2004 | 1,375 | $15.70 | $21,588 |
| 10/29/2004 | 1,025 | $15.55 | $15,939 |
| 10/29/2004 | 1,000 | $15.60 | $15,600 |
| 10/29/2004 | 1,000 | $15.59 | $15,590 |
| 10/29/2004 | 500 | $15.58 | $7,790 |
| 10/29/2004 | 100 | $15.63 | $1,563 |
| 11/03/2004 | 2,500 | $15.85 | $39,625 |
| 11/03/2004 | 2,500 | $15.75 | $39,375 |
| 11/05/2004 | 1,700 | $16.50 | $28,050 |
| 11/05/2004 | 800 | $16.30 | $13,040 |
| 11/10/2004 | 2,000 | $16.85 | $33,700 |
| 11/12/2004 | 1,000 | $16.85 | $16,850 |
| 11/12/2004 | 1,000 | $16.74 | $16,740 |
| 11/12/2004 | 601 | $16.75 | $10,067 |
| 11/12/2004 | 500 | $16.75 | $8,375 |
| 11/12/2004 | 200 | $16.77 | $3,354 |
| 11/12/2004 | 199 | $16.75 | $3,333 |
| **Totals:** | **66,254** | | **$1,205,184** |

28. During the Class Period, defendant Marshall sold a total of 21,500 shares of EPIX stock, in accordance with the following schedule, for net proceeds of $372,071:

| | | | |
|---|---|---|---|
| 10/04/2004 | 1,500 | $20.00 | $30,000 |
| 10/07/2004 | 1,500 | $17.65 | $26,475 |
| 10/15/2004 | 1,500 | $16.62 | $24,930 |
| 10/22/2004 | 1,500 | $16.70 | $25,050 |
| 10/29/2004 | 1,500 | $15.68 | $23,520 |
| 11/05/2004 | 1,200 | $16.65 | $19,980 |
| 11/05/2004 | 200 | $16.67 | $3,334 |
| 11/05/2004 | 100 | $16.66 | $1,666 |
| 11/12/2004 | 1,500 | $16.75 | $25,125 |
| 11/17/2004 | 1,500 | $17.05 | $25,575 |
| 11/24/2004 | 1,500 | $16.00 | $24,000 |
| 11/29/2004 | 1,500 | $17.45 | $26,175 |
| 12/10/2004 | 1,500 | $17.72 | $26,580 |
| 12/14/2004 | 1,500 | $18.05 | $27,075 |
| 12/21/2004 | 1,400 | $17.90 | $25,060 |
| 12/21/2004 | 100 | $17.91 | $1,791 |
| 12/28/2004 | 700 | $17.79 | $12,453 |
| 12/28/2004 | 400 | $17.82 | $7,128 |
| 12/28/2004 | 400 | $17.83 | $7,132 |
| 01/03/2005 | 365 | $18.15 | $6,625 |
| 01/03/2005 | 135 | $17.76 | $2,398 |
| **Totals:** | | **$21,500** | **$372,071** |

## FIRST CLAIM FOR RELIEF

### For Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

29. Plaintiff incorporates ¶¶ 1-29 by reference.

30. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

31. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a) Employed devices, schemes, and artifices to defraud;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of EPIX publicly traded securities during the Class Period.

32. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for EPIX publicly traded securities. Plaintiff and the Class would not have purchased EPIX publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

33. As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of EPIX publicly traded securities during the Class Period.

### SECOND CLAIM FOR RELIEF

#### For Violation of Section 20(a) of the Exchange Act
#### Against All Defendants

34. Plaintiff incorporates ¶¶ 1-34 by reference.

35. The Individual Defendants acted as controlling persons of EPIX within the meaning of Section 20(a) of the Exchange Act. By reason of their positions as officers and/or directors of EPIX, and their ownership of EPIX stock, the Individual Defendants had the power and authority to cause EPIX to engage in the wrongful conduct complained of herein. EPIX controlled each of the

00004209.WPD ; 1                                    14

Individual Defendants and all of its employees. By reason of such conduct, the Individual Defendants and EPIX are liable pursuant to Section 20(a) of the Exchange Act.

## CLASS ACTION ALLEGATIONS

36.  Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased EPIX publicly traded securities (the Class) on the open market during the Class Period. Excluded from the Class are defendants.

37.  The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. EPIX had more than 23 million shares of stock outstanding, owned by hundreds if not thousands of persons.

38.  There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)  Whether the Exchange Act was violated by defendants;

(b)  Whether defendants omitted and/or misrepresented material facts;

(c)  Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)  Whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)  Whether the prices of EPIX publicly traded securities were artificially inflated; and

(f)  The extent of damage sustained by Class members and the appropriate measure of damages.

39. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

40. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Federal Rules of Civil Procedure 23;

B. Awarding plaintiff and the members of the Class damages, including interest;

C. Awarding plaintiff's reasonable costs, including attorneys' fees and expenses; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 14, 2005

<div style="margin-left: 40%;">

**GILMAN AND PASTOR, LLP**

_David Pastor_

David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850
Facsimile: (781) 231-7840

**Local Counsel for Plaintiff**

**MURRAY, FRANK & SAILER LLP**
Eric J. Belfi
275 Madison Avenue, 8th Floor
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**GLANCY BINKOW & GOLDBERG LLP**
Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**BARON & BUDD, P.C.**
Randall K. Pulliam
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219-4281
Telephone: (214) 521-3605
Facsimile: (214) 520-1181

**Attorneys for Plaintiff**

</div>

02-11-2005  03:56pm  From-Ruden ~~~losky                    5618323036          T-864  P.002/005  F-953

## CERTIFICATION

I, _Stanley A. Kim_ , do hereby certify that:

1. I have reviewed the complaint and have authorized its filing.

2. I purchased securities of ___EPTX___ which are the subject of the complaint, *but not* at the direction of my counsel or in order to participate in any private action arising under the Securities Act of 1933 or Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995.

3. I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. In the three years prior to this certification, I have applied to serve or served as a representative party on behalf of a class in an action brought under the federal securities laws in the following actions: _None_

5. During the Class Period, I engaged in the following transactions:

### TRANSACTION INFORMATION

| BUY OR SELL | TRADE DATE | NO. OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| See attached | | | |

***For additional space, continue transactions on page 2.

6. I will not accept any payment for serving as a representative party on behalf of the Class beyond my *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class and my activities in the lawsuit, as ordered or approved by the Court.

7. Nothing herein shall be construed to be or constitute a waiver of my attorney-client privilege.

8. I certify under penalty of perjury that the foregoing is true and correct.

Executed on _2/ 11/_ 2005.          Signature _____

CERTIFICATION FORM ATTACHMENT

CLIENT NAME: STANLEY KIM_____

SECURITIES OF: EPIX_____

TRANSACTION INFORMATION

| BUY OR SELL | TRADE DATE | NO. OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| Buy | 9/2/03 | 100 | 18.20 |
| Buy | 9/2/03 | 100 | 18.20 |
| Buy | 9/22/03 | 100 | 17.20 |
| Buy | 9/24/03 | 100 | 16.04 |
| Buy | 11/12/03 | 135 | 17.15 |
| Buy | 11/12/03 | 65 | 17.20 |
| Buy | 12/10/03 | 100 | 16.80 |
| Buy | 12/10/03 | 100 | 16.80 |
| Buy | 1/8/04 | 100 | 17.35 |
| Buy | 1/8/04 | 100 | 17.46 |
| Buy | 1/8/04 | 100 | 17.49 |
| Buy | 1/8/04 | 100 | 17.50 |
| Buy | 1/8/04 | 100 | 17.50 |
| Buy | 1/8/04 | 100 | 17.50 |
| Buy | 1/8/04 | 200 | 17.50 |
| Buy | 1/8/04 | 100 | 17.50 |
| Buy | 1/8/04 | 100 | 17.50 |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) _Stanley A. Kim v. EPIX Pharmaceuticals_ FILED
   _Inc., et al._ IN CLERKS OFFICE

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   : 2005 FEB 16 P 3:00

   | | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. | U.S. DISTRICT COURT |
   |---|---|---|---|
   | [X] | II. | 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. | DISTRICT OF MASS. *Also complete AO 120 or AO 121 for patent, trademark or copyright cases |
   | | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. | |
   | | IV. | 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. | |
   | | V. | 150, 152, 153. | |

   *05 10315 PBS*

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   H.D. Yorston v. EPIX Pharamaceuticals, Inc., 05-cv-10166-PBS

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [ ]     NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

   YES [ ]     NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]     NO [X]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [ ]     NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [X]     NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?

   Eastern Division [X]     Central Division [ ]     Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division [ ]     Central Division [ ]     Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES [ ]     NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _David Pastor, Gilman and Pastor, LLP_

ADDRESS _999 Broadway, Suite 500, Saugus, MA 01906_

TELEPHONE NO. _(781) 231-7850_

(Coversheetlocal.wpd - 10/17/02)

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

STANLEY A. KIM, individually and on behalf of himself and all others similarly situated

## DEFENDANTS

EPIX PHARMACEUTICALS, INC, MICHAEL D. WEBB, PEYTON J. MARSHALL AND ANDREW UPRICHARD

U.S. DISTRICT COURT
DISTRICT OF MASS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Palm Beach,FL
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David Pastor, Gilman and Pastor, LLP
999 Broadway, S. 500, Saugus, MA 01906
(781) 231-7850

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION    (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1  U.S. Government
  Plaintiff
- ☒ 3  Federal Question
  (U.S. Government Not a Party)
- ☐ 2  U.S. Government
  Defendant
- ☐ 4  Diversity
  (Indicate Citizenship of Parties
  in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                          AND ONE BOX FOR DEFENDANT)

|                                           | PTF | DEF |                                                              | PTF | DEF |
|-------------------------------------------|-----|-----|--------------------------------------------------------------|-----|-----|
| Citizen of This State                     | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State    | ☐ 4 | ☐ 4 |
| Citizen of Another State                  | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country   | ☐ 3 | ☐ 3 | Foreign Nation                                               | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☒ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **HABEAS CORPUS:** | | ☐ 870 Taxes (U.S. Plaintiff | Under Equal Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS — Third Party | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | Security Act | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original
  Proceeding
- ☐ 2 Removed from
  State Court
- ☐ 3 Remanded from
  Appellate Court
- ☐ 4 Reinstated or
  Reopened
- ☐ 5 Transferred from
  another district
  (specify)
- ☐ 6 Multidistrict
  Litigation
- Appeal to District
  Judge from
  ☐ 7 Magistrate
  Judgment

## VI. CAUSE OF ACTION    (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Action for securities fraud under 15 U.S.C. § 78j(b)

## VII. REQUESTED IN
COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES  ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE  Saris

DOCKET NUMBER  05-10166-PBS

DATE
2/16/05

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____